The opinion of the court was delivered by
DüNCAn, J.
This was an action of trespass for mesne profits of a certain lot of ground with the buildings, brought by the plaintiffs, two of the trustees of Enoch Thomas, an absconding debtor, in which there was a verdict for the plaintiffs, and on the verdict. the District Court entered judgment for the defendants.
This court can only examine and decide on the record. A writ of error will not lie on a point reserved for the opinion of the court; if either party intends or expects a writ of error, it behoves him to spread the facts on the record before the jury in a special verdict or statement of facts agreed by the parties to stand as, a special finding by the jury; and the consent of'parties cannot give this court jurisdiction. But this record neither states' a case, nor a point of *98 law reserved. On the 24th April, 1821, a verdict .was given for the plaintiffs, subject to the opinion of the court,' on certain points-of law reserved. What these points were, the record does not inform- us. On' this verdict on the 26th April, judgment nisi was entered. We must suppose, that the points of law were decided in favour of the plaintiffs; for the record proceeds thus:— 11 And now, 27th April, 1821, S. Ewing, for defendants, moves for a rule to show cause, why there should not be a new trial on reasons filed;” and on the 25th May, 1821, an additional reason fora new trial, and in arrest of judgment, was filed, ■“ because the suit was brought by two trustees in a domestic attachment, and the suit cannot be maintained by two trustees.” And on the 15th February, 1822, after argument, the court ordered judgment to be entered for the defendants, on the grounds stated in the additional reason filed by the defendants on the 25th May, 1821. The reason assigned for entering judgment for the defendants is simply this; that two trustees cannot support any action. If it had appeared on the record, that only these two had. qualified and undertaken the duties of the appointment, and this only could appear, as it would be matter of evidence, by bill of exceptions or opinion of the court, filed under the act of assembly, I should agree with the District Court. But non constat, whether the three trustees did not accept' and qualify, and that the estate of the absconding debtor become vested in them; that they had taken possession of it, and were disseised by the present .defendants, and one of them had died; and non constat, but he died after verdict in ejectment, on which recovery in ejectment, this action could alone be predicated and supported, and after a verdict such would be the presumption of law. There was nothing in the objection when made after verdict, where it must be presumed, that all the competent proof which could he made in support of the action was made.
A judgment is not to be arrested, howe.ver defectively the title be stated, if the title itself does not apppai tó be'defective; in this action it was not incumbent on the plaintiffs to set out their title; this ■ was all matter of evidence. How they became seised, was not a natural and necessary allegation in the declaration, though it would bé a necessary part of the proof on trial. In ejectment or trespass, the plaintiff only sets out that the defendants broke and entered his close; he sets out the close to be his; but how his, he must prove on the trial, in ejectment. On demise by a corporation, and verdict for the defendants, it was moved in arrest of judgment, that-it did not appear by the record, that the demise was by deed or under seal of the corporation, and it was adjudged it was aided by the verdict. Patridge v. Ball, 1 Ld. Raym. 130. Carth. 390. The record did not show a title void in itself; its validity depended on facts to be proved in the cause, all of which were put in issue on the plea of not guilty.
*99 The domestic attachment law of 4th Dec. 1807,- Purd. Dig. 32. sect. 3. provides, “ that it shall be the duty of the court on the return of the writ, to appoint three honest and discreet men to be trustees to the creditors of such absconding debtor, with power to audit the accounts and adjust the demands of all the defendant’s creditors, and to settle the shares and proportions of the defendant’s estate, and make report to the court; and the said trustees shall, before they procéed, take an oath or affirmation, to be administered by the court appointing them, well and truly to execute the. trust reposed in them.” The 4th sect, provides, “that the said trustees shall and may take into their possession all the estate of such debtor, and all books, vouchers and papers respecting the same, and shall be deemed vested with the estate of such debtor, at the time of issuing the attachment, and shall be capable of suing for and recovering the same; and all the debts, &c. attached, shall be delivered over by the sheriff to the trustees.'” The 12th sect, enacts, “ that a majority of said trustees may exercise all the powers and perform all the duties therein given to and required of them; and in case of vacancy, the court shall supply the same by new appointment or appointments.” These trustees, though not standing commissioners or a permanent body, and appointed only for the management of the estate of the absconding debtor, yet as it is a species of public trust, as they were trustees for the whole body of creditors, to transact the affairs of others, who have no voice in their appointment, were quasi a public body — ministerial officers.
In all matters of public concern, the voice of the majority must govern. Whether the statute expressly authorises a majority to act, or is silent, the principle to be extracted from the numerous cases on this head,' is, that where a number of persons are entrusted with powers, not of mere private confidence, but in some respects of a general nature, and all of them are assembled, the majority will conclude the minority. See Co. Litt. 185. To this I would add, if regular notice be given to all, the majority, when they have met, become just as competent to decide, as if the whole had met; and in contemplation of law, it is the act of all. The majority had power to act by the express terms of the law; but it" was not a power nominatim to A. B: and C., but to three trustees, who, before they proceeded, were all to take an oath to act justly, and to discharge their duties faithfully to the best of their skill; therefore, the principle stated, does not come up to this question. Where an act confers an authority on three, and requires a particular qualification, making that qualification a condition' precedent, it seems to me, that to give the body a legal existence, it must consist of the required number, not only to be nominated, but to be qualified to act: that until the whole number accept and are qualified, it cannot be said, that there are three trustees; consequently, where *100 there are but two who accept aiid qualify, they cannot be said tobe a majority of the trustees; for the person nominated, but not accepting, cannot be called a trustee. The court are to go on to nominate-until the board of trustees is filled. These men are not judicial officers; but are ministerial officers of justice. Until there are three trustees in office, the estate cannot vest in them. The 4th section confers the possession of the absconding debtor’s estate in the three trustees ; and the said trustees, (that is the three trustees and not a majority of them,) shall be deemed vested with the estate of the debtor — it is a joint estate. The power is given to the majority to act; but the estate is vested in the three jointly. The majority certainly haye a right to sue; but not in the names of two,' if three are in full life, and continue trustees. The act of the majority would bind the dissentient, and court would not suffer him -to disavow, discontinue, or release the action ;. because the act of the majority is the act of the whole body; but if one of them die, the maj ority is competent to sue. It may be compared to the case of executors, in whom the testator vests his estate, directing them to sell. The survivor may sell, for it is not a vested authority, but an authority coupled with the estate; but a mere vested power to executors to sell, does not warrant a sale by the survivor at the common law, but by act of assembly the survivor may sell in both cases. If the title be deemed vested in the competent number of qualified trustees, and one died, it could not lie in nubibus until the vacancy was supplied, it must either remain in the survivors, or be remitted to the absconding debtor; the latter would be a construction which could never be seriously maintained. I go no further than the case requires — I speak only of a suit brought by two, when the third has died, after acceptance of the appointment and qualification. Nor do I give any opinion as to corporate bodies or courts of justice. If the evidence had been set out, and the opinion of the court on it filed, according to the act of-assembly, or bill of exceptions stating the fact that one had never accepted or qualified, that there never were three trustees, in a common action, the court would have acted erroneously if they had not instructed the jury that two could not support the action. But if the whole evidence had been spread on the l’ecord, it is quite clear, that the present plaintiffs could recover the mesne profits; at least from the time of bringing their ejectment until the recovery in ejectment, for the plaintiffs by producing the verdict and judgmentin ejectment had shown enough to entitle them to recover some mesne profits; for the production of that record would have estopped thedefendants inihis action, (who took defence in the ejectment, for if they were not parties in the ejectment, there could be no recovery in the action for the mesne profits.) In the action of ejectment formerly the damages were given for the mesne profits; indeed in the origin of the action damages only were recoverable, (the term was not recovered;) but this has *101 long grown into disuse, and this action is the only one in which mesne profits can be recovered, and though the form of proceeding in the ejectment be changed by act of assembly, yet the remedy is substantially the same, for the legislature have wisely given it this effect and no other, except that two verdicts and judgments in ejectment are' conclusive on the right; for the supplement to the original act, 1-Sth April, 1807, enacts, that it shall give remedy as fully and effectually asm ejectmentsintheform heretofore used. This action is consequential to, and results from the ejectment, it is a consequence of the recovery in ejectment. Beyond the time of demise in the, old form, beyond the timé' of action brought iri the new, the recovery in ejectment proves nothing at all, because beyond that time the plaintiff alleged no title, nor. could he be put to prove any, Aslin v. Parkyn 2 Burr. 667.
And it is settled on principle, that after, a recovery in ejectment, the defendant is estopped from controverting the plaintiff’s title in a subsequent action, provided the plaintiff only proceeds for mesne profits from the time of the ouster complained of in the ejectment. But if he proceeds for antecedent profits he must prove his right to the premises from which they arose to show his right to recover them.. So that the plaintiffs right to recover something could not be . questioned. There appears therefore, on the record no ground to arrest the judgment, unless the last position of the counsel of the defendant in error be tenable. That position is, that trespass vi et armis will no£ lie against any corporation, and that no action will lie against this corporation. To this it may be answered, that, though the action be in form of trespass, yet it is in effect to recover rents and profits received by the defendants, and in which the actual trespass is not required" to be proved, there being only two objects of inquiry, length of time and value of the premises. ■ But the main question was settled in this court, in the Philadelphia and Springhouse Turnpike Company against Putter, 4 Berg. & Rawle, 6. There the Chief Justice considered the question very fully, and proved, by a series of authorities, that actions for torts, trespasses on land, trespass vi et armis, from the earliest ages of the law, had been supported against corporations, and inoon-testibly showed, that there is no solid ground for distinction between torts and contracts, and there is certainly less difference between trespass on the case and trespass vi et armis, where the shades of difference are so indistinct that it has sometimes puzzled the most acute counsel and ablest judges to perceive the difference, or mark the distinction in any plain intelligible language.
It seems to be admitted that if the entry complained of was done by an agent of the corporation under the corporation seal the action could be supported. This, if it were necessary, would be. presumed after a verdict. I do not say, that a corporation would be responsible, in trespass for every outrage committed, by their ser *102 vants or agents. The act must appear to be done by their authority, not express, but implied from its own nature, in the prosecution of some corporate claim, in- the exercise of some corporate .right, and in such case where the act done would he within the scope of corporate claims, it would not be necessary to show the authority or mandate under corporate seal. . This body, if only a corporation sub modo have a capacity to sue and be sued co-extensive with their corporation rights and duties, but they are erected into a body corporate and politic. By the act of 28th March, 1803, Purd. Pig. 537, they are declared to be a body politic and corporate, and have power to take and hold- lands, to sue and implead, and are liable to be sued and impleaded. From the inspection of this record, it appears, not only that judgment was arrested on the plaintiffs verdict, but judgment was entered on that verdict for the defendants, and this court cannot see any cause for this. No bill of exception, no special finding of the jury, no facts spread on the record, by which it would appear, that the plaintiffs had no cause of action, and after a verdict it must be presumed that they gaye evidence to support their title, to show a right to recover, unless their own declaration shows a defective title, which no evidence could support or verdict cure. As this is a writ' of error by the plaintiffs below, and the judgment for the defendants is erroneous, it is the duty of the court not only to reverse that judgment, but to give such judgment as the District court ought to have given.
Judgment reversed and judgment, for the plaintiffs.
In the other cause the following opinion of the court was deliv•ered by
DuNCAN, J.
This case cannot be distinguished from the foregoing one between the same parties, except that it is an action of tro-ver, and the only question is, Can an action of trover be maintained against a corporation? If trespass vi et armis may, then a fortiori, trover can. If a corporation can disseise, and be liable in trespass as disseisors, then doubtless a corporation may be guilty of conversion of another’s chatties: and if it were necessary, which it is not, to prove the detention of the goods by authority of the corporation,' under their seal, after verdict, such authority must be presumed; • and the further presumption may be fully made, and it is the duty of the court to make it after verdict that all the trustees qualified, that these goods came into their hands and possession, that during the life time of the third trustee they were converted by the defendants; consequently, the action could be sustained by the two ■ survivors, the property being vested in the three, they would be joint tepants, and the right of action survive to the majority.
. Judgment reversed and judgment entered for the plaintiffs.